UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

MR. LEROY CARVER,

                              Plaintiff,

                                                    **Hon. Hugh B. Scott**


                                                    **11CV32S**
                              v.
                                                    **Report
                                                    &
                                                    Recommendation**


J. PATTERSON, et al.,

                              Defendants.


        This matter has been referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(C)

(Docket No. 8).  The instant matter before the Court is motion by moving defendants

C.O. Patterson, Elizabeth Blake, Diane Toporek, Jennifer Wrest, Kathleen Sault, and New York

State Department of Correctional Services (now Department of Corrections and Community

Supervision, or "DOCCS") (Docket No. 21) essentially for partial summary judgment.

Responses to this motion initially were due by July 10, 2015 (Docket No. 22), but plaintiff

sought an extension of that deadline of sixty days (Docket No. 23, Pl. Decl. ¶ 3).  Plaintiff states

that he is a deaf inmate and claims that his hearing impairment "complicates" his ability to

respond to defendants' motion (id. ¶ 1).  He believed that the Pro se law clerk represented him

(id. ¶ 2).  The Order extending the deadline corrected plaintiff as to the status of representation

by the Pro se law clerk (Docket No. 24) and the 60-day extension was granted (id.), with

responses due by September 8, 2015 (Docket No. 24), and the reply was due by September 30,

2015 (Docket No. 24).  Plaintiff submitted a timely response (Docket No. 25, dated Aug. 31,

2015, filed Sept. 14, 2015).  The motion thus was deemed submitted (without oral argument) on

September 30, 2015.

## BACKGROUND

Plaintiff, proceeding pro se is an inmate (currently at the Eastern Correctional Facility),

asserts violations of his constitutional rights (Docket No. 1).  He amended the Complaint

(Docket No. 4).  Plaintiff also moved for leave to proceed in forma pauperis (Docket No. 2),

which was granted but with dismissal of defendants and claims (Docket Nos. 6, Order of Jan. 15,

2014; 10, Order of Mar. 24, 2014).  The remaining claims are for violations of the Americans

with Disabilities Act[1] and Rehabilitation Act[2] against defendant DOCCS for failing to replace

plaintiff's hearing aid; excessive force from an incident on September 28, 2010, against

defendants C.O. Patterson, J. Barrett, P. Farrell, and other John and Jane Doe defendants;

harassment by Patterson following the excessive force incident; denial of medical treatment

following that incident; and a due process violation against defendant hearing officer Blake for

allegedly denying hearing assistance and sign language assistance for a disciplinary hearing

(Docket No. 4, Am. Compl.; see Docket No. 6, Order of Jan. 15, 2014, at 6-9 (paragraph A), 12-

13 (paragraph D), 13-14 (paragraph E), 18-21 (paragraph H), 21-22 (paragraph I), 26-29, 27

n.12).

As summarized by this Court in granting plaintiff in forma pauperis status (Docket

No. 6), plaintiff's first claim alleges that his hearing aid broke on August 25, 2010, and, as of the

---

[1]42 U.S.C. §§ 12131, et seq., or "ADA."

[2]29 U.S.C. § 794(a).

commencement of this action in 2011, that hearing aid had not been replaced (id. at 6).  He

alleges that this failure by DOCCS to replace or repair the hearing aid violates the Americans

with Disabilities Act and the Rehabilitation Act (id. at 6; see id. at 8-9 (surviving claim against

DOCCS only)).  The denial of this replacement hearing aid led to due process violations in the

conduct of a disciplinary hearing (id. at 6).  Plaintiff claims that defendant Blake did not provide

him with a sign language interpreter or hearing assistance during his Tier III hearing (id. at 12).

     Plaintiff also claims that he was denied medical treatment for pain following the use of

force incident on September 28, 2010 (id. at 18), by then unknown John and Jane Doe

defendants (id. at 18, 20, 25-26 (ordering defendants to identify Jane Doe defendants); see

Docket Nos. 11, 12, 14 (these John Does are identified)).

     Plaintiff asserted that he was subject to harassment by corrections officer Patterson in the

Special Housing Unit (or "SHU") to the point that plaintiff was afraid to leave his cell to shower

(id. at 21).  This Court found that the allegation was conclusory but, when considered with

plaintiff's excessive force claims against Patterson (and others), this Court allowed the

harassment claim to go forward (id. at 22).

     Defendants Barrett and Farrell, two corrections officers, served their joint Answer

(Docket No. 17), while other defendants later moved for an extension of time to file an Answer

(Docket No. 19), which this Court granted (Docket No. 20).  Defendants Patterson, Blake, Diane

Toporek, Jennifer Wrest, Kathleen Sault, and New York State Department of Correctional

Services (now Department of Corrections and Community Supervision, or DOCCS) later filed

this motion for summary judgment (Docket No. 21).  To date, no Scheduling Order has been

entered in this case.

*Defendants' Summary Judgment Motion*

This motion does not seek summary judgment as to the allegations regarding the use of force (Docket No. 21, Defs.' Statement ¶ 4), hence the claims against Patterson, Barrett, Farrell, and other John and Jane Doe defendants are not being challenged in this motion (Docket No. 21, Defs. Memo. at 1 n.1). "Instead, this Motion seeks summary judgment on the sweeping array of claims made by Plaintiff against a variety of Defendants because the claims are either unexhausted or obviously fail on the merits" (Docket No. 21, Defs.' Statement ¶ 4). DOCCS, Blake, Toporek, and Patterson move for judgment in their favor because plaintiff failed to exhaust his administrative remedies and asserts claims that lack merit, while Wrest and Saulk move for summary judgment against plaintiff's claim that he was denied medical treatment following the use of force incident because that claim is contradicted by the contemporaneous documentation showing that plaintiff did in fact receive treatment (id.).

Plaintiff's claims arise from his placement in Wende Correctional Facility ("Wende") from May 4, 2010, to January 10, 2011 (id. ¶ 5). Upon plaintiff's arrival at Wende, plaintiff was seen by an audiologist and was fitted for a hearing aid. He was issued a hearing aid on August 24, 2010, and it allegedly broke later that day when plaintiff was trying to get in the shower. (Id. ¶ 6). Plaintiff alleges that the hearing aid was not replaced as of the filing of this action in January 2011 (id. ¶ 7). Defendants point out that, on March 15, 2012, plaintiff received a replacement hearing aid (id. ¶ 35), but plaintiff was no longer in Wende when that occurred.

On September 28, 2010, plaintiff claims that he was involved in a use of force incident with defendants Barrett, Farrell, and Patterson, as well as unnamed John and Jane Does (id. ¶ 9). Following this incident, plaintiff says that he was examined but was not treated (id. ¶ 27).

Plaintiff was escorted to the medical facility for examination (id. ¶ 10).  Plaintiff was treated on

September 28-30, 2010, and seen by medical staff twelve times during October 2010 (id. ¶¶ 11,

28; Docket No. 21, Wrest Decl. ¶¶ 5-10, 11)  According to nurse defendant Jennifer Wrest,

plaintiff had his wounds cleaned, was prescribed pain medication, and received x-rays, which

Wrest concludes constitutes a thorough medical treatment (Docket No. 21, Wrest Decl. ¶ 5).

Plaintiff's injuries following the September 28 incident were bleeding in mouth from his gums;

lower lip abrasion; left cheek and post aspect of scalp; scratch noted in left ear; upper left brow

too small, less than .5 cm laceration and right shin abrasion (id. ¶ 6).  Wrest noted no swelling to

plaintiff's face or extremities as she cleaned the area, concluding that his injuries were

superficial (id.).  Defendant Sault evaluated plaintiff upon his admission to SHU at 5 pm on

September 28, 2010, noting that plaintiff had dried blood on his face and nose, two small

lacerations, right shin with abrasions, with plaintiff complaining of right side discomfort (id. ¶ 8;

Docket No. 21, Defs.' Statement ¶ 30).  On September 29, 2010, plaintiff was seen by Dr. Levitt

for swelling in plaintiff's right ankle; Dr. Levitt prescribed x-rays of that ankle (Docket No. 21,

Wrest Decl. ¶ 9).  On September 30, 2010, Dr. Levitt examined plaintiff again and found that he

had a slightly displaced left seventh rib fracture and no fracture in plaintiff's right ankle (id.

¶ 10).  Plaintiff was seen in October 2010 and continuously seen by Wende medical staff until

his transfer (id. ¶ 11).

On October 20, 2010, plaintiff was found guilty of disciplinary infractions after a Tier III

hearing conducted by defendant Blake (Docket No. 21, Defs.' Statement ¶ 12).  Plaintiff

requested and was provided assistance by C.O. Abram for this hearing (id. ¶ 13).  Plaintiff fully

participated in the hearing and did not request a hearing assistance device or sign language

interpreter, and he never claimed that he could not hear or otherwise not participate due to his auditory disability (id. ¶ 14).

Plaintiff claims that, on November 17, 2010, that defendant nurse Diane Toporek wrote that no medical rounds would be made to SHU, but Toporek wrote to plaintiff that "MD rounds are made weekly in the SHU" (id. ¶¶ 16, 15; Docket No. 21, Toporek Decl. ¶¶ 1, 4, Ex. A). Defendants conclude that plaintiff misread Toporek's letter (Docket No. 21, Defs.' Statement ¶ 17).

Regarding plaintiff's harassment claims, he claims that he filed several grievances (id. ¶ 18), including a grievance about an incident of February 28, 2010 (months before the use of force complained of in this action), without identifying what that incident was (id. ¶ 19).  A review of the Central Office Review Committee's records shows other grievances filed by plaintiff but none at issue in this case (id. ¶ 20).

Movants contend that plaintiff now asserts a number of claims that were not administratively exhausted (id. ¶ 22; Docket No. 21, Partridge Decl. ¶¶ 8-11), namely plaintiff's ADA and Rehabilitation Act claim; his due process claim against Blake for not having hearing assistance or sign language assistance during a Tier III hearing; medical indifference claims against Wrest and Sault; and deliberate indifference against Toporek for her letter on the unavailability of medical staff in SHU (id. ¶ 8).  Defendants conclude that, with the absence of such grievances, the claims against DOCCS, Blake, and Toporek, or against Patterson for the harassment claim should be dismissed under the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a) ("PLRA") (id. ¶ 11; Docket No. 21, Defs.' Statement ¶¶ 22-26; Docket No. 21, Defs.' Memo. at 4-10).

*Plaintiff's Response and Defense Reply*

Plaintiff, proceeding pro se, did not submit a counter statement of facts.  Plaintiff

responds that he opposes defendants' Answer (Docket No. 25, Pl. Affirm. ¶¶ 3-15).  But, as

stated above, this Answer was by defendants Farrell and Barrett, not movants for summary

judgment here.

Plaintiff generally argues there are issues of fact that should preclude summary judgment

(id., Memorandum at 5), but he cites fact disputes that arise from the use of force incident (id.).

Plaintiff concludes that there is an issue of fact as to the force used (id. at 8).  The use of force

incident, however, is not the subject of the moving defendants' motion (cf. Docket No. 21, Defs.'

Statement ¶ 4).

He disputes the minimization of the evidence of plaintiff's injuries leading to plaintiff's

non-treatment claims (id. at 7).  Plaintiff attaches a portion of his health record from the

September 28, 2010, incident, noting his injuries (id. at page 12 of 19, Exhibit "THIRD") as well

as photographs taken following the incident (id. at page 13 of 19, Exhibit "FOURTH").  He also

includes a memorandum from the IGP Supervisor, dated February 3, 2011, listing various

correspondence sent to that supervisor (id. at page 15 of 19, Exhibit "SIXTH"), but plaintiff does

not argue he exhausted any claims administratively at issue in this case.

Defendants reply that they now withdraw their defense that claims against Blake were

unexhausted (Docket No. 26, Defs. Reply at 1, 2).  But summary judgment should be granted to

Blake because plaintiff never stated during the Tier III hearing that he could not hear or

otherwise was unable to participate in that hearing (id. at 1-2).  Defendants note that plaintiff's

response merely addressed the Answer of defendants Barrett and Farrell, two defendants who are

7

not movants here (id. at 2).  They argue that plaintiff does not dispute that he received "ample medical care following the September 28, 2010 use of force" (id. at 2).  Although Blake withdrew his exhaustion defense, movants reply that plaintiff has not provided facts to show that he exhausted his claims against DOCCS, Toporek, or Patterson (for harassment) (id. at 3). Finally, plaintiff failed to submit a counterstatement of material facts, thus defendants conclude that this Court has to accept as true defendants' assertions (id.).

## DISCUSSION

I.     Applicable Standards

    A.     Summary Judgment

Summary judgment is appropriate only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.  Ford v. Reynolds, 316 F.3d 351, 354 (2d Cir. 2003); Fed. R. Civ. P. 56(a) (effective Dec. 2010).  The party seeking summary judgment has the burden to demonstrate that no genuine issue of material fact exists.  In determining whether a genuine issue of material fact exists, a court must examine the evidence in the light most favorable to, and draw all inferences in favor of, the non-movant. Ford, supra, 316 F.3d at 354.  "A dispute regarding a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Lazard Freres & Co. v. Protective Life Ins. Co., 108 F.3d 1531, 1535 (2d Cir.) (quoting Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986)), cert. denied, 522 U.S. 864 (1997). While the moving party must demonstrate the absence of any genuine factual dispute, Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986), the party against whom summary judgment is sought,

8

however, "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . [T]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (emphasis in original removed); McCarthy v. American Intern. Group, Inc., 283 F.3d 121, 124 (2d Cir. 2002); Marvel Characters v. Simon, 310 F.3d 280, 285-86 (2d Cir. 2002). The opponent to summary judgment may argue that he cannot respond to the motion where it shows, by affidavit, "that, for specified reasons, it cannot present facts essential to justify its opposition," Fed. R. Civ. P. 56(d). Plaintiff here has not argued that he cannot respond due to unavailable or unknown evidence.

The Local Civil Rules of this Court require that movant and opponent each submit "a separate, short, and concise" statement of material facts, and if movant fails to submit such a statement it may be grounds for denying the motion, W.D.N.Y. Loc. Civ. R. 56(a)(1), (2). The movant is to submit facts in which there is no genuine issue, id. R. 56(a)(1), while the opponent submits an opposing statement of material facts as to which it is contended that there exists a genuine issue to be tried, id. R. 56(a)(2). Each numbered paragraph in the movant's statement will be deemed admitted unless specifically controverted by a correspondingly numbered paragraph in the opponent's statement, id. (see Docket No. 26, Defs. Reply at 3). Each statement of material fact is to contain citations to admissible evidence to support the factual statements and all cited authority is to be separately submitted as an appendix to that statement, id. R. 56(a)(3).

As with pleadings, the filings of a pro se plaintiff in response to a summary judgment motion are to be liberally construed, see Haines v. Kerner, 404 U.S. 519 (1972) (per curiam).

### B.    Eighth Amendment Deliberate Indifference

Under the Eighth Amendment, in order to state a claim for inadequate medical treatment, plaintiff must allege that defendants acted with "deliberate indifference to [a] serious medical need," LaGrange v. Ryan, 142 F. Supp. 2d 287, 293 (N.D.N.Y. 2001); see Estelle v. Gamble, 429 U.S. 97, 104 (1976); see also Gregg v. Georgia, 428 U.S. 153, 173 (1976) (the Eighth Amendment prohibits infliction of "cruel and unusual punishments" which includes punishments that "involve the unnecessary and wanton infliction of pain") (citations omitted); Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994), cert. denied sub nom. Foote v. Hathaway, 513 U.S. 1154 (1995).

"To establish an unconstitutional denial of medical care, a prisoner must prove 'deliberate indifference to [his] serious medical needs.'" Hathaway, supra, 37 F.3d at 66 (quoting Estelle, supra, 429 U.S. at 104). Mere negligent treatment or malpractice upon a suspect, however, does not create an Eighth Amendment violation, see Corby v. Conboy, 457 F.2d 251, 254 (2d Cir. 1972). This claim has two elements, an objective component, that the deprivation must be sufficiently serious; and a subjective component, that the defendant official must act with a sufficiently culpable state of mind. Hathaway, supra, 37 F.3d at 66. "Sufficiently serious" deprivation for the objective component contemplates "a condition of urgency, one that may produce death, degeneration, or extreme pain." Nance v. Kelly, 912 F.2d 605, 607 (2d Cir. 1990) (Pratt, J., dissenting) (quoted in Hathaway, supra, 37 F.3d at 66). Plaintiff needs to prove that defendants wantonly intended to cause him to suffer. Wilson v. Seiter, 501 U.S. 294, 302 (1991).

10

C.    Disciplinary Hearing Procedures

To state a due process claim under 42 U.S.C. § 1983, "a plaintiff must establish (1) that

he possessed a liberty interest and (2) that the defendants deprived him of that interest as a result

of insufficient process," Ortiz v. McBride, 380 F.3d 649, 654 (2d Cir. 2004) (citations omitted)

(Docket No. 6, Order at 12).  "A prisoner's liberty interest is implicated when an institution's

disciplinary decision results in an 'atypical and significant hardship . . . in relation to the ordinary

incidents of prison life,'" Luna v. Pico, 356 F.3d 481, 487 n.3 (2d Cir. 2004) (quoting Sandin v.

Conner, 515 U.S. 472, 484 (1995)) (id.).  Special Housing Unit (or "SHU") confinement beyond

101 days, as present here, has been suggested in other cases to create a liberty interest that

entitles plaintiff to due process in the conduct of the disciplinary hearing (id. at 13); see

Chevalier v. Schmidt, No. 11CV788, 2012 U.S. Dist. LEXIS 181212, at *9 (W.D.N.Y. Dec. 21,

2012) (Curtin, J.) (four months SHU confinement found to be entitled to due process

protections).

D.    Prison Litigation Reform Act

The Prison Litigation Reform Act, 42 U.S.C. § 1997e(a) ("PLRA"), states "No action

shall be brought with respect to prison conditions under section 1983 of this title, or any other

Federal law, by a prisoner confined in jail, prison, or other correctional facility until such

administrative remedies as are available are exhausted."  The PLRA "applies to all inmate suits

about prison life, whether they involve general circumstances or particular episodes, and whether

they allege excessive force or some other wrong."  Porter v. Nussle, 534 U.S. 516, 532 (2002),

rev'g, Nussle v. Willette, 224 F.3d 95 (2d Cir. 2000).  The Supreme Court found that "Congress

enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this

11

purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case," Nussle, supra, 534 U.S. at 524-25. The act's "dominant concern [is] to promote administrative redress, filter out groundless claims, and foster better prepared litigation of claims aired in court" id. at 528, and clarify the contours of the controversy once it is litigated, id. at 525.

Plaintiff has an obligation under the PLRA to exhaust "such remedies when Congress has specifically mandated that he do so."  Giano v. Goord, 250 F.3d 146, 150-51 (2d Cir. 2001). Proper exhaustion of administrative remedies is necessary for inmate litigants to comply with the PLRA, Woodford v. Ngo, 548 U.S. 81, 83-84 (2006), that (as taken from administrative law) "'means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issue on the merits),'" id. at 90 (quoting Pozo v. McCaughtry, 286 F.3d 1022, 1024 (7th Cir.) (emphasis in original), cert. denied, 537 U.S. 949 (2002)), 93.

Exhaustion under the PLRA, however, is not jurisdictional in this Circuit, Richardson v. Goord, 347 F.3d 431, 434 (2d Cir. 2003); Ziemba v. Wezner, 366 F.3d 161, 163 (2d Cir. 2004); it is an affirmative defense for defendants to assert, Jenkins v. Haubert, 179 F.3d 19, 28-29 (2d Cir. 1999); Ziemba, supra, 366 F.3d at 163, subject to certain defenses such as estoppel, Ziemba, supra, 366 F.3d at 163; Hemphill v. New York, 380 F.3d 680 (2d Cir. 2004) (defendants' threats estopped exhaustion defense).

Prior to Woodford, the Second Circuit held, on the issue of whether the provision of the PLRA that "such administrative remedies **as are available** are exhausted," 42 U.S.C. § 1997e(a) (emphasis added), that inmate plaintiffs could be excused from non-compliance with administrative procedures or use alternative means to exhaust their administrative remedies from

12

the three-tier grievance and appeal process now available from the DOCS, see Giano v. Goord, 380 F.3d 670 (2d Cir. 2004) (special circumstances establish plaintiff's exhaustion); Hemphill, supra, 380 F.3d 680; Johnson v. Testman, 380 F.3d 691 (2d Cir. 2004) (defendants waived PLRA exhaustion defense); Abney v. McGinnis, 380 F.3d 663 (2d Cir. 2004) (defendants' behavior sometime renders administrative remedies unavailable for exhaustion purposes, such as plaintiff prevailing in the grievance process but defendants not implementing the grant of the relief); see also Ortiz, supra, 380 F.3d 649 (total exhaustion not required for mix of exhausted and unexhausted claims).

The viability of this test has been questioned since the Supreme Court's decision in Woodford, supra, 548 U.S. 81 (2006); see Amador v. Andrews, 655 F.3d 89, 102 (2d Cir. 2011); Macias v. Zenk, 495 F.3d 37, 43 n.1 (2d Cir. 2007) (Docket No. 21, Defs.' Memo. at 8 n.3).

II.    Application

Plaintiff did not file a statement of facts to counter defendants' Statement (see Docket No. 26, Defs. Reply at 3).  Under this Court's Local Civil Rule 56, defendants' statements are deemed admitted, id. R. 56(a)(2).  Also, this motion does not address the use of force of September 28, 2010 (although plaintiff's response addresses this incident), but focuses on other claims that arise as a result of that use of force.  Finally, the focus of the moving defendants' argument is that plaintiff failed to exhaust his administrative rights in first raising these claims in grievances and other proceedings prior to suing here; defendants generally do not address the merits of plaintiff's claims.  The only exception to this is plaintiff's denial of medical treatment.

A.      Denial of Medical Treatment

First, plaintiff claims that defendants Wrest and Sault were deliberately indifferent to his medical needs by not treating him following the September 28, 2010, incident, in particular not treating his complaints of pain.  The medical record presented in support of defendants' motion, and not contradicted by plaintiff, showed that plaintiff received medical treatment.  While plaintiff may disagree about the course of treatment he received or its sufficiency, he cannot deny that he received treatment (see Docket No. 21, Defs.' Statement ¶ 34).  On the objective prong of the deliberate indifference standard, plaintiff has not shown that he did not receive treatment.  Accepting plaintiff's allegations as true (including his response, Docket No. 25, Pl. Affirm. at pages 12-13, and 15 of 19, documenting his injuries), the injuries alleged are not sufficiently serious to be a constitutional violation.  Plaintiff's allegations may not state malpractice or negligence, much less the higher standard for a constitutional violation under the Eighth Amendment.

On the subjective prong, plaintiff also fails to show that defendants intended to deprive him of treatment (such treatment that he did not receive).  This claim should be **dismissed** and defendants' motion for summary judgment (Docket No. 21) on this ground should be **granted**.

Plaintiff also claims that Toporek was deliberately indifferent by writing that plaintiff while in Special Housing Unit would not get sick calls.  Plaintiff alleges that he was told by Toporek that there would not be weekly medical rounds in Wende's Special Housing Unit.  But Toporek's letter (Docket No. 21, Toporek Decl. ¶ 2, Ex. A) stated "MD rounds are made weekly in SHU.  Please address your medical issues with the MD at this time."  This Court reviewed the letter and agrees with defendants that plaintiff misread it; it clearly states that rounds <u>would</u>

14

occurred weekly.  Plaintiff has not presented evidence that medical rounds did not occur regularly in Wende's SHU or that he was deprived access to sick calls, despite his allegations that he made sick call requests in October 2010 and no one responded (Docket No. 4, Am. Compl. ¶¶ 39-41) and although he did see a doctor during that period (id. ¶ 42).  As defendants' note (see Docket No. 21, Defs.' Statement ¶ 34), plaintiff's claims here are his dispute about the nature and extent of treatment received.  This alone fails to state an Eighth Amendment deliberate indifference claim.  Defendants' summary judgment motion (Docket No. 21) to dismiss this claim should be **granted**.

> B.    Disciplinary Hearing and Hearing Assistance

Plaintiff claims that he was denied hearing assistance during the Tier III disciplinary hearing following the incident.  But defendants' uncontested facts state that plaintiff never raised this as an objection during the disciplinary hearing and never sought an interpreter or hearing assistance device (Docket No. 21, Defs.' Statement ¶¶ 12-14; id., Appx., Ex., Tier III transcript, Bates No. 000097-000111).  A review of the Tier III transcript reveals only a few instances when plaintiff appeared not to understand what was said, and hearing officer Blake repeated her question or statement (Docket No. 21, Ex., Tier III Tr., Bates No. 000101, 000102, 000103, 000104-06, 000108), including repeating the number of days plaintiff had to appeal the determination (id., Bates No. 000110-11).  Plaintiff had representation during this proceeding (id., Ex., Tier III Tr., Bates No. 00097).  He was asked at the conclusion of the sentence whether he understood and he said that he did (id., Ex., Tier III Tr., Bates No. 000110).  Absent the request, or an indication in this record that the hearing was fundamentally unfair since plaintiff

could not hear, moving defendants' motion for summary judgment should be **granted** on this claim.

But there was a threshold objection, whether plaintiff exhausted his administrative remedies for this claim (Docket No. 21, Defs. Memo. at 10-11), but defendants now concede (Docket No. 26, Defs. Reply at 1, 2) that Blake claims here were exhausted.

C.      Exhaustion of Other Claims

Defendants researched whether plaintiff grieved the harassment claims (among other claims) he now raises in this action and found that plaintiff has not exhausted these claims.  This Court need not address the viability of the exception from the exhaustion requirement since plaintiff has not argued that he was in any way hindered from commencing or perfecting a grievance.  The record shows plaintiff's familiarity and usage of the inmate grievance process (see generally Docket No. 21, Jeffrey Hale Decl. ¶¶ 4, 6, Ex. A).

Plaintiff did not grieve his claim surrounding Toporek's letter regarding the availability of sick calls (id. at 11-12) or against Patterson for harassment (id. at 12).  For these claims, plaintiff does not argue that he exhausted them or was somehow prevented from doing so. Therefore, under the PLRA, defendants' motion for summary judgment (Docket No. 21) should be **granted** on the ground that plaintiff failed to exhaust his administrative remedies as to these claims and those not grieved or unexhausted claims should be **dismissed**.

III.    After This Motion

As for plaintiff's remaining claims, based upon this Report (if adopted in its present form) his ADA and Rehabilitation Act claims against DOCCS for not replacing the broken hearing aid would be dismissed, as would be his due process claims against Blake for not having

hearing assistance during the disciplinary proceeding, his harassment claims against Patterson, and his deliberate indifference claims against Toporek, Wrest, and Sault.

Given that some of the defendants move for partial summary judgment and other defendants have yet to do so, upon the adoption of this Report, claims (for example, the use of force claims against Patterson, Barrett, and Farrell) will remain for disposition.  No Scheduling Order was entered in this case; upon resolution of any objections to this Report and final disposition of the movants' motion for summary judgment, this Court will issue a schedule for discovery and other pretrial proceeding for the remaining parties.

## CONCLUSION

Based upon the above, it is recommended that the motion of moving defendants Patterson, Blake, Toporek, Wrest, Sault, and New York State Department of Corrections and Community Supervision for partial summary judgment (Docket No. 21) be **granted**.


Pursuant to 28 U.S.C. § 636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. § 636(b)(1), Fed. R. Civ. P. 72(b) (effective December 1, 2009) and W.D.N.Y. Local Civil Rule 72.3(a).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME OR TO REQUEST AN EXTENSION OF SUCH TIME**

**WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT DISTRICT COURT'S ORDER ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.**  Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988).

The District Court on de novo review will ordinarily refuse to consider arguments, case law and/or evidentiary material which could have been, but was not, presented to the Magistrate Judge in the first instance.  See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

Finally, the parties are reminded that, pursuant to W.D.N.Y. Local Civil Rule 72.3(a)(3), "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority."  **Failure to comply with the provisions of Rule 72.3(a)(3) may result in the District Court's refusal to consider the objection.**

SO ORDERED.

_/s/ Hugh B. Scott_
Hon. Hugh B. Scott
United States Magistrate Judge

Dated: Buffalo, New York
October 14, 2015

18